Russell MILLER, Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY,
a corporation, Appellant.

CITY PRODUCTS CORPORATION,
a corporation, Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY,
a corporation, Appellant.

No. 50671.

Supreme Court of Missouri,

Division No. 2.

April 12, 1965.

Motion for Rehearing or for Transfer to
Court En Banc Denied May 10, 1965.

George W. Cady, St. Louis, for respondent, Russell Miller.

Lusser & Lusser, Rene J. Lusser, Rene E. Lusser, St. Louis, for respondent, City Products Corporation.

James Ruddy, St. Louis, for appellant.

PRITCHARD, Commissioner.

Respondent Miller filed his action for personal injuries against appellant wherein he prayed for $75,000 damages. Respondent City Products Corporation also filed its action pursuant to Section 287.150 RSMo 1959, V.A.M.S., to recover from appellant $8,497.-40 paid as workmen's compensation benefits to Miller, it being alleged that he was injured during the course of his employment with City Products. The actions were consolidated by the trial court.

Trial beginning on November 4, 1963, was to a jury which returned a verdict for appellant and against respondents. Respondents' motions for new trial were sustained upon two specified grounds, (1) that the giving of Instruction No. 2 upon the burden of proof was error; and (2) that the verdict was against the weight of the evidence. From the order granting a new trial this appeal has been perfected by appellant. We have jurisdiction by reason of the amounts prayed for exceeding $15,000. Const.Mo.1945, Art. V, Sec. 3, V.A.M.S.

Appellant challenges the order for new trial first upon the theory that it was an abuse of discretion upon the trial court's part because respondents failed to make a submissible case; and second that Miller was contributorily negligent as a matter of law. (Appellant says also that the giving of Instruction No. 2 on the burden of proof was not error, and that there was no evidence to be weighed because appellant put on none relating to liability.) We therefore examine the evidence in its light most favorable to respondents.

Respondent Miller testified that on the date of his injury, August 14, 1959, he was employed by respondent City Products Corporation, with duties of delivering ice to taverns and restaurants, for which he drove a 1½ ton truck equipped with a cab and body. Between 8:00 and 8:30 a. m. on that date he arrived in the 2400 block on 14th Street in St. Louis, Missouri, between North Benton and North Market streets. He parked his truck headed south between a parking meter and an alley on the west side of 14th Street which was 36 feet wide. His truck was about 7 feet wide and extended that distance into the street from the curb. Miller then walked across the street to the Colonial Tavern (an ice customer) and remained there three or four minutes. He then came back out, and stepped out into the street 6 or 7 feet past some cars parked on the east side of 14th Street, looked to the south and to the north, but did not see a thing coming in the immediate block. He could see north to Benton Street about 130 feet and south to Market Street about 150 feet.

Miller then began walking at a normal gait toward the cab portion of his truck, and diagonally across the street in a southwest direction for a distance of about 22 feet. When he reached the truck he heard "like somebody had their hand on the horn" and he "figured they was going to belt me" and he squeezed up against the cab of the truck right at the cab door, with his body against it and his legs up to the running

board. Miller had just started to reach for the truck cab door when he heard the horn. He heard a scrape and a "thump" coming from the rear of the truck two or three seconds after he heard the horn. He remembered nothing more at that time, having been rendered unconscious. After he regained consciousness Miller saw a man at the scene of the accident wearing a gray uniform and a Public Service shield on the top of his cap. He also saw a Public Service bus to the south of him parked at about North Market Street. Other witnesses put the distance of the bus from Miller at about 35 feet. Miller was then lying alongside his truck, about 2 feet from it. He then lost consciousness again, and awoke later in a hospital.

Although not in issue here, we mention that, among others, Miller received injuries to his right leg which necessitated hospitalization, the wearing of a cast, a brace and the use of a cane for a time.

On the day of the accident the weather was warm and there was no rain or anything on the street which made it hazardous to stop.

The photographs of the truck as it appeared after the accident were put in evidence. On its left side it had a scrape or indentation mark at the left rear near the top; an angle iron was pulled away from the lower left rear of the truck, and the metal of the bed was pushed inward at that point. An indentation and scrape mark were also on the left front of the truck bed, which extended beyond the door of the cab between 12 and 14 inches. Miller testified that before the accident the truck had been newly painted and had no damage to it, other than on the rear where blocks of ice were pulled from the truck.

Benjamin J. Moynihan testified that on August 14, 1959, he was a passenger in the front part of a St. Louis Public Service bus—the Florissant bus line which travels on 14th Street. As the bus was going south on 14th Street he heard a "thump" noise coming from the rear of the bus at the time the bus passed the truck. He looked back and saw a man lying in the street. The bus stopped within 35 feet of the truck.

Joe Musiol testified that on the morning of August 14, 1959, he was driving beer to the Colonial Tavern on 14th Street. He saw Miller walk across the street to his truck, and when Miller was 6 inches or a foot away from the truck Musiol saw a red Public Service bus going south. Musiol yelled, "Look out, you'll get hit," but knew that Miller didn't hear him. All of a sudden the bus was by and he heard a "thump" and then saw Miller lying on the street, and he went across the street to see what he could do for him.

Defendant's argument with respect to the submissibility of plaintiffs' cases is that the evidence did not show when the operator of the bus failed to keep a proper lookout, and that there was no evidence that the defendant had the means and ability to have avoided the accident. Plaintiffs, on the other hand, argue that there is evidence that the bus operator failed to keep a proper lookout, and that it is not incumbent upon plaintiffs to prove that because of such failure to keep a lookout the negligent bus operator failed to stop or swerve, or sound a timely warning.

■ The object and purpose of the strict requirement that persons operating motor vehicles keep a proper lookout upon public streets and highways is that they may acquire knowledge of the presence of other persons and objects on such streets and highways, and an awareness of dangerous situations and conditions. It is only because of that knowledge and awareness that the operators of motor vehicles may take appropriate precautionary measures to avoid injury to themselves and other persons within an existing area of peril.

■ It has long been the rule that it is unnecessary to hypothesize in an instruc-

tion upon the lookout doctrine the exact manner in which, or means by which, the party charged with negligence in failing to keep a proper lookout could have acted to have avoided a collision. (Moore v. Ready Mixed Concrete Company, Mo., 329 S.W.2d 14, 25 [9–10]; see also the now effective Missouri Approved Instructions, §§ 17.02 and 17.05.) We do not take the rule to mean that there is a submissible case without sufficient facts and circumstances, from which, at least, a permissible inference could be made and a jury could find, that such manner and means of avoidance existed. This concept is developed in Creech v. Riss & Company, Mo., 285 S.W.2d 554, 562 [7–8], where it is said, "It is true that, even though the jury found that Otto Boss was negligent in failing to keep a proper lookout, still, to find for plaintiff, the jury had to further find that such negligence contributed to directly cause plaintiff's injuries; and to arrive at the last-mentioned conclusion, the jury had also to find or to reason from the evidence that Otto Boss could have acted within his ability to act so as to have avoided the collision with Riss. The exact manner in which Otto Boss could have acted to avoid his collision with Riss was a finding or inference based upon the evidentiary facts which were adduced in support of the submitted essential finding of causation. * * * The exact manner in which, and the means by which, he could have acted to have avoided the collision were not essential hypotheses under the circumstances of the instant case, so long as there was substantial evidence to support a reasonable finding that Boss had the means and ability to have so acted that a collision with Riss would have been avoided." Thus the general statement found in the cases, that "It ought, therefore, be sufficient to authorize a verdict if a jury finds that a party was negligent in failing to keep a proper lookout and that such negligence resulted in (i. e., proximately caused) a collision or damage," is explained. Nelson v. Evans, 338 Mo. 991, 93 S.W.2d 691, 693 [2]; Anthony v. Morrow, Mo.App., 306 S.

W.2d 581, 587. (Parenthetical statement added.) So, in order to show that a negligent failure to keep a lookout proximately caused the accident or injury, it is necessary to have further evidentiary facts that the person charged with such negligence could have acted in some manner so as to avoid the accident or injury. In addition to the Creech and Moore cases, supra, see O'Neill v. Claypool, Mo., 341 S.W.2d 129, 135 [11, 12]; Boehm v. St. Louis Public Service Company, Mo., 368 S.W.2d 361, 366 (where the contention was overruled that there was no substantial evidence to support an instruction that defendant Company had the means and ability to avoid the collision had a vigilant watch and lookout been kept); and Zalle v. Underwood, Mo., 372 S.W.2d 98, 102 [1–3].

■ In this case, however, we hold that there were sufficient facts and circumstances adduced by which a jury could find that appellant's bus operator failed to keep a proper lookout, and that the same was the proximate cause of the accident and Miller's injuries. Miller testified that as he stepped about 7 feet into the street he looked first south, then north, and in the latter direction he could see all the way to North Benton Street—some 130 feet. There was no traffic approaching at that time, as Miller could see. He then proceeded to walk in a normal gait across the street approximately 22 feet to the cab of his truck. We may judicially know that the average walking speed of a person is 2.9 to 4.4 feet per second. McFarland v. Wildhaber, Mo., 334 S.W.2d 1, 3 [2–7]. At sometime during the 5 to 7 seconds that it took Miller to walk across the street, and the 2 or 3 seconds that he stood by the door of his truck, defendant's bus must have been approaching from the north, and during all of the time of such approach the operator of the bus had or should have had Miller within the plain range of his vision upon the clear and unobstructed street. Being held to the duty of looking ahead and seeing Miller (or seeing him before he did when apparently he sounded the horn) in a position

of danger, either in walking across the street or standing by the cab of the truck, the bus operator should then have taken some precautionary measures to avoid the accident. Under the facts and circumstances here that the portion of the street available for travel and maneuvering was about 22 feet in width (36 feet less about 14 feet on both sides for parked vehicles), the jury could reasonably have found that the operator could at least have sounded a timely warning or swerved his vehicle sufficiently to the left to have avoided striking Miller who was at all times in plain view. Although appellant contends that there was no evidence that the bus struck plaintiff, we hold that there were sufficient facts and circumstances in evidence that the jury could find that it did. Respondents made a submissible case of the negligence of the bus operator in failing to keep a proper lookout. Appellant's Point I is overruled.

■ Appellant claims that respondent Miller was contributorily negligent as a matter of law, and neither of respondents may therefore recover. The evidence showed that Miller stepped past the parked cars on the east side of 14th Street and into the street about 7 feet from the curb. He then looked both ways and saw nothing in the street. He then proceeded to walk across what appeared to be a clear street. Upon these facts, the issue of Miller's contributory negligence in failing to look again as he crossed the street was for the jury. Brown v. Conser Laundry Co., Mo., 246 S.W. 166, 169 [2]; Epstein v. Kansas City Public Service Co., Mo.App., 78 S.W.2d 534, 537; and Romandel v. Kansas City Public Service Co., Mo., 254 S.W.2d 585, 591 (a pedestrian crosswalk case). Appellant's Point II is overruled.

The court, upon its own motion and over the objection of both respondents (such objection being made by counsel for one of the respondents on behalf of both), gave the following burden of proof instruction (No. 2):

"The Court instructs the jury that the burden of proof is upon plaintiffs to prove their case against the defendant by the preponderance or greater weight of the credible evidence, and unless plaintiffs have done so, your verdict should be for the defendant.

"The Court instructs the jury that the burden of proof, on the issue of contributory negligence, is upon the defendant to prove such contributory negligence by the preponderance or greater weight of the credible evidence, and unless defendant has done so, your findings should be for the plaintiff on the issue of contributory negligence.

"By the term 'preponderance or greater weight of the credible evidence' is meant evidence which is more satisfying to you than the evidence offered in opposition thereto."

■ Specified as one of the grounds for granting the motion for new trial to plaintiffs was error in the giving of Instruction No. 2. This ground for the motion was correct as is readily seen when the third paragraph definitive phrase, "evidence which is more satisfying to you than the evidence offered in opposition thereto," is substituted for that which it defines in the first and second paragraphs, making them read, "The Court instructs the jury that the burden of proof is upon plaintiffs [defendant] to prove their case [such contributory negligence] *by evidence which is more satisfying to you than the evidence offered in opposition thereto * * *.*" This brings the instruction squarely within the condemnation of the "to the satisfaction" clauses in the case of Bell v. Pedigo, Mo., 364 S.W.2d 613, 620 [9], and we hold, for the foregoing reason, that the trial court did not err in granting a new trial to plaintiffs because of error in giving Instruction No. 2. Point III is ruled against appellant, and it is unnecessary to consider the further point concerning the ground for new trial that the verdict was against the weight of the evidence.

The order granting a new trial is affirmed and the case is remanded therefor.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD C., is adopted as the opinion of the Court,

All of the Judges concur.