Bob COX, Plaintiff-Respondent,

v.

Jess MOORE, Defendant-Appellant.

No. 8434.

Springfield Court of Appeals.

Missouri.

Aug. 10, 1965.

Mann, Walter, Powell, Burkart, & Weathers, Jack A. Powell, Robert W. Schroff, Springfield, for defendant-appellant.

Lindell R. Church, Springfield, for plaintiff-respondent.

RUARK, Presiding Judge.

Defendant appeals from a judgment for damages in the sum of $6,710. The suit is the outgrowth of a collision between plaintiff's 1955 Oldsmobile and (allegedly) defendant's Guernsey steer, in which all concerned came off second best.

The incident occurred after dark in a rural or semi-rural area on paved Highway 266, which runs in a generally east-west direction. Defendant's dwelling house sits on the south side of the road. A driveway runs from the highway down past the west side of the house and, apparently, to defendant's barn lot. Plaintiff had spent the afternoon inventorying his "Hillbilly Haven," which is situate some twelve miles west of Springfield. Having finished with that, he drove easterly to "Ed's" place, where he says he drank (only) "one beer," and then, around 7:30 P.M., drove east on the highway toward Springfield. He testified that he was driving fifty–sixty miles per hour; that as he came over a little knoll in front of defendant's home there were five head of cattle strung out across the road, heading south. A black cow was in front and in the ditch on the south side, the four others following "straight behind." He cut his car to the left and applied his brakes but struck hindermost a Guernsey steer weighing, he said, between six and seven hundred pounds, in the right rear flank. This threw the steer around to the right and threw plaintiff against his left door, thus causing his alleged injuries. He pulled into defendant's driveway. The steer and the other cattle did not remain in the vicinity but went off in the dark. There were no other witnesses to the occurrence. Defendant's son came out of the house; plaintiff told him, "I hit one of your cattle, buddy." The son said "Where'd they go," and he said "Out toward your barn." Plaintiff drove on up the road, called the State Highway Patrol, and drove back to defendant's place. The patrolman came; by that time the defendant had arrived and, according to plaintiff, defendant said, " 'Well, Bob,' he said, 'Don't worry about anything.' He said, 'I'll take care of everything on the cattle.' He said, 'It was my cattle.' He said, 'I'll take care of everything on it.' " Thereafter he went on to Springfield. Defendant does not agree as to this conversation; but, since plaintiff has the verdict, we must accept that version which is most favorable to him.

Defendant's son testified he was in the house and heard a noise that sounded like a blowout; a man pulled into the driveway, and he thought the man was fixing a flat. He went out and saw plaintiff. Plaintiff said he had hit a calf (but did not mention any cows); so the boy went up toward the end of the barn to look for a calf, or anything out on the lot, but found none; and found no gates open. He went back to the house to phone his father; and, while he was calling, plaintiff left. He thought plaintiff was drunk. He said they had a new seven-foot fence; that the cattle down in the pasture would have had to go through three gates to get out on the road.

Defendant testified his place was well-fenced and that his seven milk cows were in a pasture beyond and south of the barn lot and such cattle would have had to go through two gates in order to get up to the barn lot. In the morning they were still in the pasture. He also had three small calves locked in the barn, and two larger ones, a Guernsey steer and a Holstein bull, in the barn lot, all of which were still in place in the morning. He did ascertain that the top of the end post at the gate into the driveway "was pushed over"; later he cemented that post in. The fastener at the top of the gate was still hooked but the bottom of the gate was pushed open a little bit. He said that it might have been possible for a calf to put his head through, "spring it on," and squeeze through, but that it would have been impossible for a cow to do so. The next day defendant found the Guernsey calf (steer) was "hopping" some, and he had it butchered. The foreman at the packing plant testified this steer (he called it a "ranny") had a small bruise on his left hindquarter. He trimmed it off, and the carcass passed inspection.

Appellant's first assignment is that plaintiff did not make a submissible

case because he did not prove that it was defendant's steer which he hit. He argues that plaintiff in his deposition testified that nothing was said by the defendant that night concerning the ownership of the cattle; and that in any event defendant, not having been home, could not have known it was his steer that plaintiff hit. He relies on plaintiff's deposition to contradict the testimony as to his alleged admission that the cattle were his. But previous contradictory statements are for the jury, and this is true as to statements made in depositions.[1] Defendant also asks, "What happened to the other cattle plaintiff said he saw, who owned them?" The implication is that since it was seemingly impossible for defendant's other cattle to have been out, it follows that plaintiff's story that he saw five cows cannot be true; or, if true, that the cattle were not defendant's or his responsibility. The jury was not required to believe the testimony of defendant and his son in regard to the number and location of his cattle, the character of gates and fencing, and the impossibility of the cows having gotten out; but the primary question concerns ownership of the Guernsey steer which defendant concedes was in the barn lot. The jury might not have believed the plaintiff as to the fact that there were five animals loose on the highway but did believe that the Guernsey steer was there. The fact that only the steer was on the highway, if so, would have a bearing on contributory negligence and causal connection, in that a jury might have found, had the issue been submitted to it, that plaintiff should have seen the steer in time to have avoided it; but this does not affect plaintiff's case as to submissibility. The plaintiff's case is supported by the admitted fact that the gatepost was loose and the bottom of the gate was pushed open. It is also supported by the fact that the next morning the Guernsey steer was "hopping a little bit" and was butchered. The Mis-

---

1. Douglas v. Farrow, Mo., 334 S.W.2d 234, 238; Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775, 778; Snider v. King, Mo. App., 344 S.W.2d 265, 277; Schonlau v. Terminal R. Ass'n of St. Louis, 357 Mo., 1108, 212 S.W.2d 420, 423.

souri Stock Law (RSMo 1959, § 270.010) permits the inference of negligence from the fact the animal was loose on the road. We believe plaintiff made a submissible case.

Appellant claims error in the refusal of his Instruction No. 5 which was as follows:

"The Court instructs the jury if you find and believe that at the time and place mentioned in evidence the plaintiff, Bob Cox, was operating his automobile eastwardly on the highway shown in evidence and if you further find that at said time and place a steer and other cattle were on the highway and in the path of plaintiff's automobile, and if you further find that in the exercise of the highest degree of care and by keeping a lookout ahead the plaintiff, Bob Cox, could have seen that there was danger of a collision with said steer or cattle if he continued to drive his automobile eastwardly, and if you further find that the plaintiff failed to exercise the highest degree of care in failing to keep a careful and vigilant lookout, if so, and that in so failing the plaintiff's car collided with the steer shown in evidence and that the plaintiff, Bob Cox, was thereby negligent and that such negligence, if you find he was negligent, directly contributed to cause his injuries and damages, if you find he was injured or damaged, then you are instructed that plaintiff, Bob Cox, is not entitled to recover on his petition in this case and this is true regardless of whether the defendant was negligent."

Defendant had pleaded contributory negligence. Plaintiff's Instruction No. I told the jury that negligence on the part of the defendant might be inferred from the fact that the cattle were on the highway at the time of the collision.

Prior to its reenactment (Laws 1939, p. 360), the Stock Law statute, § 270.010, V.A.M.S., did not contain any reference to negligence. However, this court in Carr v. Threlkeld, Mo.App., 31 S.W.2d 592, had held that the mere presence of unattended animals on the highway makes a prima facie case of violation of the stock law. It treated such fact as analogous to res ipsa loquitur in respect to making a case of primary negligence. The reenactment included a provision which solidified that interpretation by making it a defense that the animals were outside the enclosure through no fault or negligence of the owner. Since then it has been interpreted as permitting a recovery on the theory of negligence, with the burden of showing lack of negligence on the owner. Keefer v. Hartzler, Mo.App., 351 S.W.2d 479, 480–481; King v. Furry, Mo.App., 317 S.W.2d 690; Anderson v. Glascock, Mo.App., 271 S.W.2d 243. Meshed with the proposition of animals running loose on the highway are the common law in regard to negligence and the statutory rules of the road concerning the operation of automobiles on the road. Every driver is required to use the highest degree of care (§ 304.010 V.A.M.S.; Ficken v. Hopkins, Mo., 389 S.W.2d 193[2]) in respect to animals as well as persons and vehicles.[2] So we consider negligence and contributory negligence proper subjects of inquiry in a case brought under the stock law.

An instruction on failure to keep a lookout is generally considered sufficient if it hypothesizes the failure to keep a lookout and requires a finding that such failure was negligence which directly caused or contributed to the collision. Miller v. St. Louis Public Service Company, Mo., 389 S.W.2d 769; Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, 25; Anthony v. Morrow, Mo.App., 306 S.W.2d 581, 587;

---

2. Pullam v. Moore, 204 Mo.App. 697, 218 S.W. 938; Anderson v. Dail, 224 Mo. App. 403, 21 S.W.2d 496, 498; see Carr v. Threlkeld, Mo.App., 31 S.W.2d 592, supra; Shelton v. Rudd, Mo.App., 242 S.W. 151; Tucker v. Carter, Mo.App., 211 S.W. 138.

Patton v. Hanson, Mo., 286 S.W.2d 829; De Mariano v. St. Louis Public Service Co., Mo., 340 S.W.2d 735, 744; Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500–501. We consider the Instruction No. 5 sufficient as to form and content.

█ But respondent says that the instruction was properly refused because there was no evidence to support it. The plaintiff testified that his car was in good condition and his lights were on bright. He felt safe in driving fifty–sixty miles per hour. Section 304.350 V.A.M.S., provides that lights on high beam shall be arranged and aimed so as to reveal a person or vehicle for at least three hundred fifty feet ahead. In the absence of evidence to the contrary it will be presumed that plaintiff's lights so conformed. Brown v. Wooderson, Mo., 362 S.W.2d 525, 529; Lemken v. Brooks Truck Lines, Inc., Mo., 322 S.W.2d 803, 805.

We must make a further examination of the facts. The terrain traversed, and this highway, was not entirely level; rather it was somewhat rolling. Going from west to east, as plaintiff was traveling, there is a slow and gradual incline commencing some distance to the west and continuing to a gradual leveling off or "crest" somewhere about near the front, or in the vicinity, of defendant's premises. Further east it then commences to decline and goes into somewhat of a dip. Both parties introduced various photographs. Plaintiff's photographer established to his own satisfaction (but how we do not know) the location of the "crest" and took pictures and measurements in reference to distances from such crest. The incline and decline is so gradual that we are unable to determine from the photographs just where that crest is. It is established that the driveway into defendant's premises was on the west side of the dwelling house and east of the barn. On the north side of the highway, opposite the entrance to the driveway, was a mailbox, apparently of average height and dimension, and most pictures are oriented with the mailbox. Plaintiff testified that the collision took place thirty or forty feet *east* of the driveway. That he was approximately one hundred feet back (to the west) when he "came over this little knoll" and saw the cattle. Then he introduced his Exhibit B (a picture which he apparently took himself), which purported to show the exact place where the collision occurred and the skidmarks of his car. He marked the exhibit (apparently with an "O" or circle) to show the exact spot of the collision. He testified that the knoll was a little bit *east* of the point of impact. Then he testified that the knoll was "right up there where I made the circle" and marked an "N" to show where the knoll was. If by the knoll which plaintiff came over he meant the crest of the gradual rise, then according to this testimony the collision occurred at the top of the rise, or slightly west of it, in the direction from which the plaintiff was coming. Also, again referring to the exhibit, it purports to have been taken with the camera facing west so that it showed as he was "coming down the road toward the camera." This picture shows no sign of the driveway or the mailbox, which should have appeared if the collision occurred, as plaintiff testified, thirty to forty feet east of them. It may, or may not, well be that plaintiff was confused in his directions, but that would be a question for the jury to consider.

█ Plaintiff introduced his Exhibit C, being a photograph with camera in position, as the photographer testified, two hundred fifty feet west from the "crest of a rise that is east of the camera position," which was never exactly marked or identified, except the photographer said this crest was "fifty feet west of the west edge of the driveway" and the camera position was some three hundred to three hundred twenty feet west of the mailbox opposite the driveway. The mailbox and its supporting post are clearly visible in that picture. Another of plaintiff's exhibits is taken with the camera position five hundred feet west of the crest of the rise, which would be five

hundred fifty feet west of the mailbox. In that picture the mailbox is not visible. Defendant offered pictures taken with camera facing east, one at a point one hundred fifty feet west of the mailbox which clearly shows the mailbox, the grass below it, and the road beyond. Another, taken four hundred eighty-three feet west of the mailbox, clearly shows the mailbox and a man, said to be kneeling, at a point seventy-five feet east of the mailbox, or five hundred fifty-eight feet from the camera position. All these pictures except Plaintiff's Exhibit B, both by plaintiff and defendant's photographers, were taken with the camera in the position of what the photographers conceived to be the eye level of a man sitting in a car. Respondent argues that such do not necessarily show the distance that car lights would reveal an object on the road if the object was on a down slope and the approaching car was coming up an incline. With this we agree, but plaintiff's testimony puts somewhat in doubt whether or not the cattle were crossing the road at or near the extreme top of the rise. The mailbox is not as large, nor as wide, nor as long, as a cow; and a series of cross-moving objects (cows) should ordinarily be more susceptible of discernment than a stationary one. If plaintiff failed to keep a careful lookout for objects ahead of him upon the road and this failure contributed to the collision, he was guilty of contributory negligence. He is charged with having seen what he should have seen. See v. Kelly, Mo.App., 363 S.W.2d 213, and cases at 216; Hendrickson v. Resnik, Mo.App., 390 S.W.2d 610, 616; West's Missouri Digest, Automobiles, ☜ 150. And if he failed to see what he should have seen in time to stop or slow his automobile with reasonable safety to himself in time to avoid the collision, he was guilty of contributory negligence. Failure to keep a lookout may be inferred from the facts and circumstances appearing in the case.

Kitchen v. Wilson, Mo., 355 S.W.2d 38, 40; see Miller v. St. Louis Public Service Co., Mo., 389 S.W.2d 769, supra; and cases at West's Missouri Digest, Automobiles, ☜ 246(19, 20). Constitutive elements of negligence and causal connection may be legally supported by circumstantial as well as by direct evidence. Brooks v. Terminal Railroad Ass'n, Mo.App., 276 S.W.2d 600(3); Genova v. Kansas City, Mo.App., 254 S.W. 2d 38(2); Miller v. Fink, Mo.App., 387 S.W.2d 173(4). The jury has the right to disbelieve the plaintiff even though his evidence is not rebutted. Sykes v. Stix, Baer & Fuller Co., Mo.App., 238 S.W.2d 918, 919, and cases cited. And we think it was not required to accept plaintiff's estimate of speed and sight distance. Anderson v. Duckworth, Mo., 383 S.W.2d 726, and cases at 728; Miller v. Fink, Mo.App., 387 S.W.2d 173.

■■■■ Whether the failure to keep a lookout at any time or place constitutes negligence depends upon the conditions and circumstances and is usually a jury question (Slaughter v. Myers, Mo., 335 S.W.2d 50, 54; Henrickson v. Resnik, Mo.App., 390 S.W.2d 610[12]), as all negligence is ordinarily a question for the jury. It is always so where different minds might reasonably draw different conclusions and inferences from the evidence.[3]

■■■■ We do not say that plaintiff was guilty of negligence which contributed to cause the collision as a matter of law, but we do believe that, under the whole evidence in this case, the jury was entitled to pass on that question. The refusal of defendant's Instruction No. 5 denied them the opportunity of doing so. This we think was prejudicial error, and for such reason the case must be reversed and remanded. So ordered.

STONE and HOGAN, JJ., concur.

---

3. Brandt v. Thompson, Mo., 252 S.W.2d 339, 341; Boone v. Richardson, Mo.App., 388 S.W.2d 68, 74; Freeman v. Myron Green Cafeterias Co., Mo., 317 S.W.2d 303 (7); Hamilton v. Ross, Mo., 304 S.W.2d 812(2); Wilson v. White, Mo.App., 272 S.W.2d 1(8); Taylor v. Hitt, Mo.App., 342 S.W.2d 489(8); Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14(1).