**George LAMB, Plaintiff-Appellant,**

v.

**E. J. HEILIGERS and Gilbert Buick, Inc., a corporation, Defendants-Respondents.**

**No. 36330.**

Missouri Court of Appeals, St. Louis District, Division One.

Dec. 16, 1975.

Howard, Richardson & Edwards, St. Louis, for plaintiff-appellant.

George F. Heege, Clayton, for defendants-respondents.

DOWD, Judge.

Plaintiff appeals from a judgment entered after a jury found in favor of the defendants in an action for personal injuries arising from an automobile collision. We affirm.

The plaintiff claims that the trial court erred in: (1) allowing defendants' investigator to explain measurements of damages on photo-copies of the autos involved; (2) in submitting a contributory negligence instruction; (3) in withdrawing the issue of lost wages from the jury; (4) in not permitting the plaintiff to call the defendant Heiligers as an adverse witness; (5) in not permitting plaintiff's witnesses to relate complaints relative to his injuries; (6) in not directing a verdict in favor of plaintiff; and (7) in failing to admonish defendants' attorney.

On December 15, 1970, the plaintiff, George Lamb, stopped for a traffic signal in a line of traffic facing east on Gravois Avenue, west of the intersection of Grand and Gravois Avenues in the City of St. Louis. The defendant, Edward J. Heiligers, an employee for defendant Gilbert Buick, Inc., had stopped for a few moments behind plaintiff's auto. As defendant Heiligers attempted to pass plaintiff on the left, the right side of defendant Heiligers' auto scraped against the left side of plaintiff's auto.

Plaintiff claims that defendant Heiligers carelessly drove his auto into the rear fender of the plaintiff's Cadillac while plaintiff was stopped. Defendant claims that plaintiff allowed his (the plaintiff's) auto to roll back as he lawfully attempted to pass. Pictures showed that the damage was mainly to the left side of plaintiff's auto and to the right side of Heiligers' auto.

Plaintiff testified that upon impact he blacked out for 2 or 3 seconds. After regaining consciousness he was beckoned by defendant Heiligers to proceed to a nearby parking lot. There the two men exchanged names and addresses. The police were not called. The autos were able to be driven from the scene. At the scene, the plaintiff made no complaints about being injured.

Dr. Vaughn C. Payne, who treated the plaintiff, diagnosed the plaintiff as having a severe whiplash injury to the neck, upper and lower back and aggravation of a spondylosis of the neck and back. He stated that spondylosis is a form of arthritis. Dr. Payne testified that it was his opinion that the injury was due to the December 15, 1970 accident, and that the aggravation of spondylosis was a permanent injury. Plaintiff's counsel was permitted to read into the record, before the jury, the deposition of Dr. Jacques P. Schaerrer, who was not made available for testimony at trial. It was Dr. Schaerrer's opinion that the accident of December 15, 1970 caused the traumatic aggravation of the preexisting spondylosis. Plaintiff's hospital bill was $860 and his doctor bill was $450.

Dr. Belmont R. Thiele, who examined plaintiff for the defendants testified that it was his opinion that the plaintiff's arthritic changes were present on December 15, 1970, and were not the result of the accident.

Lela Lamb, wife of the plaintiff, Charles Jackson, plaintiff's nephew, and Dorothy Jackson, wife of Charles Jackson, each testified about the plaintiff's decrease in activity since December 15, 1970. Plaintiff's counsel, referring to plaintiff, asked Mr. Jackson: "Q. Does he complain to you a lot?", and to Mrs. Lamb: "Q. Has he been complaining more or less now, than he did immediately after the collision?" The court

sustained objections to both of these questions as hearsay.

Plaintiff testified that on the day of the accident he was to start a new job as a custodian for the St. Louis Board of Education, but was unable to do so because of the accident. On cross-examination, however, plaintiff stated that he was unemployed on the day of the accident, and was looking for electrical parts. The testimony of Geraldine Tapp, who was in charge of hiring uncertified (non-teaching) personnel for the St. Louis Board of Education, is unclear as to the date a job was made available to Mr. Lamb. Of the two notations in her records, one says, "Hold. Going into hospital.", and. is dated December 16, 1970. The second notation is to the effect that she wrote a letter to a lawyer saying she had called Mr. Lamb on December 15, 1970 concerning the job opening. This letter was dated December 21, 1970. However, Ms. Tapp's testimony in court shows that she is not sure when she called Mr. Lamb, but that it was "approximately" December 15, 1970. Mr. Lamb had been on the Board's job waiting list for seven or eight months, and Ms. Tapp stated that she would not have known when she would have called him.

As part of the plaintiff's case, plaintiff's counsel read into the record portions of a deposition given by the defendant Heiligers. After reading the deposition, Mr. Heiligers was called as a witness by the plaintiff.

Thomas Aurella, an investigator for defendants testified that he had gone to plaintiff's residence to observe plaintiff's auto on December 30, 1970, and January 19, 1971.

Photographs of the car were taken by Mr. Aurella at the December 30, 1970 visit. Aurella had taken the measurements of the damages to plaintiff's auto. Mr. Aurella was present when a fellow employee, who did not testify, took measurements of the damage to defendants' auto. These measurements were incorporated into photocopies of the pictures of both autos. The court overruled the objection of plaintiff's counsel to having Aurella explain the measurements to the jury. Photocopies of both autos showing the measurements of the damages were admitted into evidence.

Included in the court's instructions to the jury were instructions on contributory negligence (Instruction No. 6—MAI 32.01, Modified); measure of damages instruction (Instruction No. 8—MAI 4.01); and an instruction (No. 8a) withdrawing from the jury's consideration the issue of plaintiff's loss of wages from the Board of Education.[1] The plaintiff's objections to Instructions No. 6 and No. 8a were overruled.

Defendants' attorney suggested to the jury during argument that the plaintiff had been referred to Dr. Payne by an attorney for plaintiff. The court sustained an objection to these remarks, and the jury was instructed to disregard the comment. The court did not admonish defendants' attorney as was requested by plaintiff's counsel.

Plaintiff's first contention on appeal is that the trial court erred in permitting defendants' investigator Aurella to explain to the jury certain measurements of damages which were on the photocopies of plaintiff's and defendants' autos. Plaintiff argues

---

1. The court's instructions included:

Instruction No. 6

"Your verdict must be for the defendants whether or not defendant E. J. Heiligers was negligent if you believe:

"First, plaintiff allowed his automobile to move backwardly from a stopped position, and

"Second, plaintiff's conduct as submitted in paragraph one was negligent, and

"Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff might have sustained."

Instruction No. 8

"If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence."

Instruction No. 8a

"The issue of the plaintiff's bed, chair, and loss of wages from the Board of Education is withdrawn from the case, and you are not to consider such evidence at arriving at your verdict."

that this testimony was hearsay and inadmissible because the measurements were not made by Aurella. However, the record shows that the measurements of the damages of plaintiff's auto were made by Aurella. Therefore, we are concerned solely with whether it was proper for Aurella to explain a fellow employee's measurements of damages on defendants' auto.

◼ We believe that the court properly permitted Aurella to explain the measurements of damages on defendants' auto. The pictures from which the photocopies had been taken had been identified by the witness as the basis of the photocopies and were themselves properly admitted. Aurella had personally observed the auto and was present when the measurements were being taken by a fellow employee. Thus the explanation of the measurements which had been incorporated into the photocopies was a correct and accurate representation of the relevant facts personally observed by the witness. McCormick, Handbook of the Law of Evidence, 2d ed., p. 530. Mr. Aurella's availability to be cross-examined as to the circumstances of the taking of the measurements, which were observed by him, relieves one of the major objections to the hearsay rule. In *Powell v. Kansas City Rys. Co.,* 226 S.W. 916, 923[4] (Mo.1920), the Supreme Court held that a physician could testify about the measurements taken by another physician, when the physician had observed the measurements being made. See also *Greene County v. Hermel, Inc.,* 511 S.W.2d 762, 768[3] (Mo.1974) wherein a vice-president in charge of construction was allowed to testify about construction costs in tax assessment case; *Willis v. Buchanan County Quarries Co.,* 218 Mo.App. 698, 268 S.W. 102, 105[8] (1924) in which a doctor was permitted to testify about analysis conducted in laboratory supervised by the doctor.

◼ Plaintiff next contends that the court erred in submitting the contributory negligence instruction to the jury. The plaintiff contends that his auto was struck

as the defendant Heiligers carelessly passed his auto on the left, while the defendants contend that the plaintiff's auto rolled back as Heiligers tried to pass. Viewing the evidence in a light most favorable to the defendants and the verdict, the conflict in the testimony presented a question for the jury to decide, as is ordinarily true for all questions of negligence. ·*Schoessel v. Robertson,* 480 S.W.2d 95 (Mo.App.1972); *Cox v. Moore,* 394 S.W.2d 65, 70[13, 14] (Mo.App. 1965). Furthermore, we note that "the jury has the right to disbelieve the plaintiff even though his evidence is not rebutted." *Cox v. Moore,* supra, at 70. The trial court did not err in submitting the contributory negligence instruction to the jury.

Plaintiff next contends that the court erred in withdrawing from the consideration of the jury the issue of wages allegedly lost from the Board of Education. There is some question whether the lost wages were established with the requisite degree of reasonable certainty. *Thienes v. Harlin Fruit Co.,* 499 S.W.2d 223, 229–30 (Mo.App.1973). However, we do not reach this issue, for the jury found against plaintiff on the issue of liability and thus did not reach the issue of damages. *Gardner v. McGee,* 505 S.W.2d 452 (Mo.App.1973); *Haas Baking Co. v. Luzio,* 512 S.W.2d 428, 431[7] (Mo.App. 1974). In this case the issue of fault was strenuously contested. Plaintiff testified that while he was stopped for a traffic light, the defendant Heiligers collided with the left rear fender of his auto. Defendant Heiligers, however, testified that the plaintiff's auto rolled backwards while Heiligers was attempting to pass plaintiff's auto on the left. The pictures of both autos appear to corroborate defendant Heiligers' version. The pictures show a "scraping" type damage to the left side of plaintiff's auto and a "scraping" type damage to the right side of Heiligers' auto.

◼ From the jury's finding, which we must accept, it is obvious that the jury believed defendant Heiligers' version, and, accordingly, returned a verdict for the de-

fendants on the issue of fault and did not reach the issue of damages. Since the claimed error in this case relates to damages, we hold that the trial court's withdrawal from the jury of the issue of lost wages, if error at all, was not prejudicial error. *Haas Baking Company v. Luzio*, supra; *Gardner v. McGee*, supra.

Plaintiff next contends the trial court erred in not permitting him to call defendant Heiligers as an adverse witness. At the time plaintiff called Heiligers as a witness, the defendants' attorney objected on the grounds that "it is improper to call him [Heiligers] as his witness."

The trial court, however, permitted plaintiff's attorney to call Heiligers as his witness. The plaintiff then proceeded to briefly examine defendant Heiligers. The applicable statute is 491.030 RSMo 1969, which in part states:

> "Any party to a civil action or proceeding may compel any adverse party . . to testify as a witness in his behalf, in the same manner and subject to the same rules as other witnesses; provided, that the party so called to testify may be examined by the opposite party, under the rules applicable to the cross-examination of witnesses."

■ The plaintiff has the right to call the defendant as his witness and is entitled to cross-examine him, § 491.030, and the plaintiff is not bound by the defendant's testimony unless it is the only testimony in the case on that point. *Frank v. Wabash Railroad Co.*, 295 S.W.2d 16, 22 (Mo.1956). Likewise, plaintiff has the right to introduce evidence contradicting that given by the defendant, but a party cannot *directly* impeach the credibility of his own witness even though the witness is the other party to the suit.[2] *State ex rel. State Highway Commission v. Davis*, 466 S.W.2d 172 (Mo. App.1971); *Wells v. Goforth*, 443 S.W.2d

155 (Mo. banc 1969); *Hutchinson v. Steinke*, 353 S.W.2d 137, 146 (Mo.App.1962).

Here the trial court permitted the plaintiff to call the defendant Heiligers to the stand as a witness in his behalf. Likewise, the plaintiff had the right to cross-examine Heiligers and was not prohibited from so doing by the trial court. There was no error by the trial court.

■ Next, the trial court did not err in sustaining objections to plaintiff's counsel asking the witness, Charles Jackson: "Does he [the plaintiff] complain to you a lot?", and the witness Lela Lamb: "Has he [the plaintiff] been complaining more or less now than immediately after the collision?" Such questions do not meet the requirement that they be directed to "present, existing conditions so as to be the natural and spontaneous expression of his [the ailing person's] feelings at the time." *Kenney v. J. A. Folger & Co.*, 192 S.W.2d 73, 77[9] (Mo. App.1946).

■ Plaintiff next raises the issue whether the trial court erred in failing to grant his motion for a directed verdict at the close of all the evidence. In viewing the evidence in the light most favorable to the defendants we cannot say that a factual dispute is lacking to the extent that the evidence and the inferences to be drawn therefrom would require us to find for plaintiff as a matter of law. This is not such an unusual case as to warrant the exceptional measure of taking the fact-finding function away from the jury. *Alaska Federal Savings and Loan Ass'n v. Hoffman*, 485 S.W.2d 118, 120 (Mo.App.1972).

■ Plaintiff's final contention is that the trial court erred in not admonishing defendants' counsel, as requested, for suggesting that plaintiff had been sent to see Dr. Payne by an attorney for plaintiff. Here the trial court took corrective action in sustaining the objection and instructing

---

2. The exception to the ban against direct impeachment is where the adverse witness is confronted with his own prior inconsist-

ent statement. *Wells v. Goforth*, 443 S.W.2d 155, 160 (Mo. banc 1969).

the jury to disregard the remark. The matter of admonishing counsel is discretionary with the trial court. *Hunt v. Hunt,* 423 S.W.2d 682, 684[2] (Mo. banc 1968); *Wilkins v. Cash Register Service Company,* 518 S.W.2d 736, 753[25] (Mo.App.1975). We hold that the trial court did not abuse its discretion.

The judgment is affirmed.

WEIER, P. J., and RENDLEN, J., concur.