Larry B. WOODS, Appellant,

v.

CITY OF LAKE LOTAWANA, Respondent.

No. WD 39224.

Missouri Court of Appeals, Western District.

April 26, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1988.

Application to Transfer Denied July 26, 1988.

L.R. Magee, Hines & Magee, Kansas City, for appellant.

Daniel E. Hamann, Mimi E. Doherty, Deacy & Deacy, Kansas City, James T. Cook, Paden, Welch, Martin, Albano & Graeff, Independence, for respondent.

Before COVINGTON, J., Presiding, and SHANGLER and PRITCHARD, JJ.

COVINGTON, Presiding Judge.

Larry Woods sued the City of Lake Lotawana, Missouri, in two counts. In the first count, he requested that Chapters 68 and 69 of the City's ordinances be enforced and adhered to by the City, asserting that the City had denied him the right to repair his private sewer system and had required him to construct an extension from his property to the public sewer line. In Count II, Mr. Woods claimed that he was deprived of the use of his residence and the ability to maintain the residence which consequently deteriorated, and he sought damages therefor. In April, 1986, a jury heard a portion of the case solely to make a finding on the questions of whether the septic tank constituted a condition dangerous or injurious to the health and safety of the occupants of the premises or occupants of neighboring dwellings, and whether the tank had a blighting influence on the properties of the area. The jury found in favor of the City.

In August, 1986, the trial court heard the remainder of the case to determine the issue of plaintiff's right to damages. The trial court found that Mr. Woods had no right to damages but did order the City to issue a permit for the repair of Mr. Woods' septic tank subject to existing laws and regulations.

Mr. Woods appeals. The City does not appeal, and the City does not question

whether the judgment entered by the trial court was within the scope of the remedy Mr. Woods requested. The judgment is affirmed.

Larry Woods purchased lot T160 at Lake Lotawana in 1977. The lot was improved with a one and one-half story house, and the house was served by a septic tank. The tank had been installed when the house was built approximately twenty years earlier. The tank originally had an access port, a metal collar equipped with a metal cover, which protruded from the ground. When Woods took possession of the house, the lid on the access port had rusted through, and he replaced it with a homemade wooden cover. He experienced no problems with the operation of the tank.

Early in 1980, Mr. Woods contacted the City of Lake Lotawana to inquire about connecting to the city sewer system. Mr. Woods received a letter from the City's Director of Public Works, dated March 5, 1980, which stated, "The top of your septic tank has caved in. You are creating a health hazard. Violation of City Code, Chapter 68, par. 68.030 subpar. 2 and 3 is evident." The letter told Woods to repair the tank or comply with the City Code provisions requiring connection to the city sewer system within fifteen days or face possible condemnation proceedings. The City had no specific procedures for issuing a permit for repair of a septic tank. Mr. Woods took no action. He received a letter, dated March 27, 1980, from Dr. R. Vincent Davis, Environmental Sanitarian for the Jackson County Health Department, which stated that the health department had inspected the premises and found that the top of the septic tank had fallen in, that the tank appeared to be on the verge of collapse due to the corrosion of the metal walls, and that the tank was no longer practically serviceable. The letter ordered Mr. Woods to connect his residential drainage to the nearest city sewer connection point within sixty days.

Mr. Woods' property was more than one hundred feet from the nearest sewer con-nection. Under his interpretation of the applicable city ordinances, the City could require him to connect to the system only if the City brought its main to within one hundred feet of his property line. The City's position was that, if a pre-existing sewer became unsanitary, the property owner was required to connect to the sewer system at his own expense regardless of the distance to the nearest connection point. Woods notified the City by letter dated May 2, 1980, that he was prepared to extend his sewer line one hundred feet in any direction to connect to the City's main. He requested specific directions for instal-lation of his sewer line.

The Director of Public Works, Mr. Evan Detwiler, replied by letter dated May 9, 1980. The letter provided general specifi-cations for the construction of a four-inch line to the property line and an eight-inch line to the end of the city sewer. The letter stated that two manholes would be required, gave the required slope of the line, and referred Woods to the city code for additional requirements. The letter stated that the City would not engineer the project and that Woods would have to bear the entire cost of the engineering and in-stallation.

Mr. Woods, through his attorney, in-formed the City by letter that his property was more than one hundred feet from the sewer connection and carried no industrial wastes. He cited two sections of the city code. One contained the one hundred foot requirement; the other indicated that own-ers of sewers carrying industrial wastes could be required to install manholes. Mr. Woods' attorney also wrote to the city at-torney threatening an action in mandamus to compel the City to extend its main. Having reached an impasse, Mr. Woods took no further action. He was subse-quently arrested and charged with viola-tions of several sections of the city ordi-nances, including § 68.030(1) and (2), for operating a private sewerage disposal facil-ity in an unsanitary manner. On October 23, 1980, the property was posted as unfit

for human habitation, and Mr. Woods was ordered to vacate the premises. Mr. Woods filed the instant suit against the City on March 17, 1983.

Mr. Woods first alleges that the trial court erred in overruling his motion for directed verdict because Chapter 68, The Model Sewer Code, is void for vagueness in that it does not define "sanitary manner."

■ Mr. Woods argues that this alleged defect in the ordinance renders it unconstitutional and void. He fails, however, to specify what provisions of what constitution were violated. The bare allegation that an ordinance is unconstitutional preserves nothing for review. *City of Eureka v. Litz,* 658 S.W.2d 519, 521 (Mo. App.1983). The allegation that an ordinance is void for vagueness is grounded in the due process clause of the Fifth and Fourteenth Amendments to the U.S. Constitution, and Article I, § 10 of the Missouri Constitution. *City of Festus v. Werner,* 656 S.W.2d 286, 287 (Mo.App.1983). A constitutional question must be raised at the earliest possible time consistent with good pleading and orderly procedure under the circumstances of the case; otherwise, it is waived. *Creamer v. Banholzer,* 694 S.W.2d 497 (Mo.App.1985). Mr. Wood's attack on the ordinance as void for vagueness could have been raised at the pleading stage. Notably, Mr. Woods' pleadings invoked the protection of the ordinance. Failure to raise the issue of vagueness at the pleading stage results in its being waived.

Mr. Woods next claims that the trial court erred in refusing to allow Mr. Woods to pass to the jury Exhibit 4, the Jackson County Health Department's file concerning the Woods matter. Specifically, Mr. Woods wanted the jury to view correspondence from Dr. Vincent Davis to the City regarding Dr. Davis' inspection of Mr. Woods' property, and correspondence of other city officials which, Mr. Woods asserts, would establish that the City was engaged in a conspiracy to keep Mr. Woods physically away from the property he owned.

■ Allowing or refusing the passing of exhibits to the jury for examination is within the discretion of the trial court. *Wilkins v. Cash Register Service Company,* 518 S.W.2d 736, 747 (Mo.App.1975). Mr. Woods' counsel examined Dr. Davis and had the opportunity to present to the jury, through examination of Dr. Davis, the contents of all relevant correspondence from Dr. Davis to the City regarding inspection of Mr. Woods' property. Dr. Davis' letters included many matters irrelevant to the issue being considered by the jury, the issue being whether or not the septic tank constituted a health or safety hazard. The alleged conspiracy was not before the jury. The trial court did not abuse its discretion in determining that the documents identified by Dr. Davis should not be passed to the jury.

■ Mr. Woods next complains that the trial court erred in denying Mr. Woods the right to pass to the jury the affidavit of Mayor Schrader. Mr. Woods does not cite to the record regarding his allegation of error. An independent review of exhibits filed with this court discloses that Mayor Schrader's affidavit was not marked as the plaintiff's exhibit, was not offered into evidence during the jury trial, and that Mr. Woods did not request permission to pass it to the jury during the jury trial. Consequently, the trial court could not have erred.

■ Mr. Woods next contends the trial court erred in refusing to allow him to pass to the jury Chapter 68 of the city ordinances—the Model Sewer Code. The trial court has wide discretion to allow or refuse the passing of exhibits to the jury for examination. *Wilkins,* 518 S.W.2d at 747. The only questions for the jury were whether the septic tank constituted a condition dangerous or injurious to the health and safety of the occupants of the premises or occupants of neighboring dwellings, and whether the tank had a blighting influence on the properties of the area. At the close of the evidence, Mr. Woods' counsel agreed that the verdict form adequately submitted the proper question to the jury. The trial

court properly observed that the purpose of the jury in this case was to determine the factual issues, not to construe the provisions of the ordinance. The trial court acted within its discretion.

In his final point, Mr. Woods alleges that the trial court erred in finding that he was not entitled to damages. Mr. Woods claims that the decision of the trial court is not supported by substantial and competent evidence. Mr. Woods argues for the first time on appeal that he is entitled to damages under the doctrine of inverse condemnation. The basis of Mr. Woods' claim is that the City, by posting the property and forcing Woods to vacate, effectively took his property from him for public use without just compensation by intentionally misapplying its ordinances.

■ The valid exercise of the police power is not a taking of private property for public use. *City of Kansas City v. Tayler*, 689 S.W.2d 645, 646 (Mo.App.1985). The posting of Woods' property and the municipal court's order to vacate the premises because of the unsanitary condition of the septic tank were valid exercises of the police power. Mr. Woods' dispute with the City over who should bear the cost of connecting to the public sewer system did not convert the posting into a taking.

■ Moreover, the trial court specifically noted that Mr. Woods had not affirmatively asked the City for permission to repair the property until one month prior to the court-tried case, and, then, only at the trial court's own instigation. The trial court's finding of fact "will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). There is evidence in the record sufficient to support the trial court's finding. Much evidence was disputed. Due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses. Rule 73.01(3)(b). *Murphy v. Carron*, 536 S.W.2d at 32. Joanne Shirley, City Clerk and custodian of applications for permits, testified that she conducted a search to determine whether or not there were any applications by Mr. Woods for permission either to construct a septic tank or to make a sewer extension. There were none. On cross-examination, Mr. Woods acknowledged that, at the time the controversy arose in the spring of 1980, his concerns were how to hook up to the city sewer and who was to pay for it. Mr. Woods also admitted that he had never filed an application for a permit to extend his sewer to the city sewer and never presented any plans or specifications relevant to an extension. Mr. Woods never wrote a letter complaining of a denial of a right to repair the septic tank.

Because Mr. Woods did not ever affirmatively ask the City for permission to repair the property, Mr. Woods cannot complain that he was denied the right to repair the property. There is evidence in the record to support the City's action in posting the dwelling. Since Mr. Woods took no appropriate affirmative actions to rectify the problems which caused the posting of the property to take place, Mr. Woods cannot now complain of being kept from the property.

The judgment is affirmed.

All concur.