**Patricia J. REED and Tyler K. Reed, Appellants,**

v.

**Donald M. SPENCER, M.D., an individual, Donald M. Spencer, M.D., Professional Corporation, and Research Medical Center, Respondents.**

**No. WD 40330.**

Missouri Court of Appeals, Western District.

Oct. 18, 1988.

Cindy L. Reams, Dillard and Weisenfels, Kansas City, and L.D. McDonald, Jr., Michael A. Preston and Gregory J. Pappas, McDonald, Preston & Louk, Overland Park, Kan., for appellants.

Thomas W. Wagstaff and Timothy M. Aylward, Blackwell, Sanders, Matheny, Weary, and Lombardi, Kansas City, for respondents.

Before SHANGLER, P.J., and CLARK and NUGENT, JJ.

CLARK, Judge.

Appellant Patricia J. Reed sued respondents for medical malpractice associated with surgery performed upon her to correct a congenital defect in her left hip. A jury returned a verdict for respondents. Appellants present seven points of alleged trial error.

It is unnecessary to this opinion that all factual details of the case be recounted. It suffices to say that Patricia Reed consulted Dr. Spencer relative to hip pain. Mrs. Reed was ultimately admitted to the hospital where Dr. Spencer performed a femoral osteotomy, a procedure in which the femur is severed, the bone sections are repositioned and a fixation device is inserted. Recovery from the operation was unsatisfactory. Dr. Theodore Sandow was later consulted and he performed a total replacement of Mrs. Reed's hip. The claim here is that the osteotomy was not skillfully performed and the hip replacement and associated complications were attributable to that medical malpractice.

■ In their first point, appellants complain of the ruling by the trial court denying counsel the opportunity to conduct a redirect examination of plaintiff Patricia Reed for the purpose of rehabilitating her testimony. The issue arose in consequence of cross-examination which confronted Mrs. Reed with her deposition testimony to the effect that Dr. Spencer's treatment had alleviated Mrs. Reed's complaints. Counsel sought the redirect interrogation to establish that the deposition testimony was the product of a misunderstanding, that Mrs. Reed had made her answers in respect to treatment she received from Dr. Sandow, not Dr. Spencer. Also proposed was further questioning of Mrs. Reed on the subject of pain she experienced at night. The court denied plaintiffs the opportunity to engage Mrs. Reed in redirect questioning.

Redirect examination is an appropriate method to rehabilitate a witness and to remove doubt about his testimony created by cross-examination. *Cignetti v. Camel*, 692 S.W.2d 329, 338 (Mo.App.1985). It is, however, also well established that the scope and extent of redirect examination is a matter for the sound discretion of the trial court and that the court's action to control redirect questioning will not be disturbed unless an abuse of discretion is clearly shown. *Eickmann v. St. Louis Pub. Serv. Co.*, 363 Mo. 651, 659, 253 S.W.2d 122, 126 (1952).

Appellants were not unqualifiedly entitled to conduct a redirect examination of their witness. Whether the trial court erred depends instead on determining if, under the circumstances present at the time, there was a reasonable basis for the court to rule as it did that the examination tendered on redirect was cumulative of previous testimony already adduced.

The record of Mrs. Reed's testimony shows she was not surprised when defense counsel introduced the subject of her deposition testimony. She promptly explained the answers given on deposition by stating that she misunderstood the question as referring to the treatment rendered by Dr. Sandow. She reiterated her complaint that the operation performed by Dr. Spencer had made her condition worse. She also explained an apparent discrepancy between her testimony at trial and answers given in the deposition about the onset of and recovery from pain she experienced at night. Redirect examination on those subjects could have reinforced plaintiffs' position that the deposition material should be disregarded as the product of mistake and confusion, but the evidence was, nonetheless, cumulative. That, coupled with the failure by plaintiffs to make an offer of proof to show the content of redirect testimony, is sufficient to require a finding that the trial court did not abuse its discretion in denying the redirect examination of Mrs. Reed. Appellants' first point is denied.

■ In their second point, appellants say the court erred in permitting defendants to introduce the testimony of Dr. Sandow as an expert medical witness when he had not been endorsed as such pursuant to Rule 56.01(b)(4)(a). There is no merit to the contention.

Dr. Sandow was originally listed as an expert medical witness to be called on behalf of the plaintiffs. On the eve of trial, plaintiffs withdrew their listing of Dr. Sandow as an expert, but produced him as a general witness to testify regarding his treatment of Mrs. Reed and about her condition. On cross-examination, defendants attempted to secure an opinion from Dr. Sandow on the exercise of proper medical judgment by Dr. Spencer. Plaintiffs objected on the basis that no proper foundation had been laid. Defendants then questioned Dr. Sandow about his familiarity with Mrs. Reed's case, the area in which the objection had contended a foundation was preliminarily required. In the course of that questioning, Dr. Sandow was asked if an osteotomy was a proper option for treating a patient with the symptoms Mrs. Reed had displayed. The witness answered that it was.

In the first place, the question originally put to Dr. Sandow regarding Dr. Spencer's exercise of judgment was never answered. The subject was ultimately abandoned when Dr. Sandow said he would have difficulty answering because he had not seen

the patient earlier. It is therefore doubtful that appellants have any basis in the record for this complaint.

Even were it to be assumed that the question asked and the answer given by Dr. Sandow amounted to an expert medical opinion on the standard of care exhibited by Dr. Spencer, appellants have preserved nothing on this subject for appellate review. Plaintiffs did present a motion in limine seeking to prohibit defendants from questioning Dr. Sandow as an expert, but in the exchange at trial when Dr. Sandow was asked and gave his opinion generally about a proper course of treatment for a patient such as Mrs. Reed, plaintiffs made no objection. Despite the success or failure of a motion in limine, where testimony in the challenged area is adduced without objection, no cognizable error is preserved. *Williams v. Enochs,* 742 S.W.2d 165, 168 (Mo.banc 1987). This rule recognizes the interlocutory nature of the ruling on a motion in limine. Appellants' second point is denied.

In their next point, appellants argue that the court erred in permitting the defendants to introduce testimony by Dr. Richard Santore, defendants' expert witness, on the quality of medical care given Mrs. Reed by Dr. Spencer. The point as to limitation on the scope of Dr. Santore's evidence arose in the following manner.

After the time limit imposed by the court on the parties for naming expert witnesses had expired, defendants undertook to name Dr. Santore as an additional expert. Their stated purpose was to counter the tendered expert evidence by plaintiffs' substituted expert, Dr. Henry Marsh. Plaintiffs objected and the court ruled on the objection in an order which stated:

Defendants will be allowed to offer into evidence at trial competent, relevant evidence from Dr. Richard Santore, defendant's [sic] recently identified expert witness, for purposes of rebutting testimony of plaintiffs' expert witness, Dr. Henry Marsh, regarding the validity of osteotomy surgery as a means of treating hip problems, the appropriateness of performing an osteotomy on patients in

Patricia Reed's age group, and the propriety of performing an osteotomy on plaintiff.

At trial, defendants' attorney was permitted over plaintiffs' objection to ask Dr. Santore whether, in his professional opinion, the treatment rendered Mrs. Reed by Dr. Spencer met or exceeded the standard of care for orthopedic surgeons practicing under the same or similar circumstances. Appellants contend this violated the court's previous order limiting the scope of Dr. Santore's expert testimony and also placed plaintiffs at a disadvantage because they had not deposed Dr. Santore in this area.

The basis for appellants' complaint appears to be their perception of the court's protective order as limiting the testimony of Dr. Santore to the theoretical arena and excluding any expression of his opinion on the actual treatment rendered to Mrs. Reed. No objection is raised about the content of the order itself, only the application of the order as a basis for ruling on the objection. We conclude the appellants have failed to accept the breadth of the order.

The phrase, "the propriety of performing an osteotomy on plaintiff," plainly encompasses an area of professional expertise and admits of evidence undertaking to pass judgment on whether a skilled medical practitioner would have treated Mrs. Reed as did Dr. Spencer. It may well be that plaintiffs' expert, Dr. Marsh, was intended by plaintiffs to be a witness testifying only that osteotomies were generally inappropriate, but that too is an expression of opinion on a standard of medical care. Moreover, in reviewing the selected portions of the deposition of Dr. Santore reproduced in appellants' brief, it appears defendants' attorney made clear his intention to question Dr. Santore exactly as he did. It may not now be validly contended by appellants that they misperceived the scope of the protective order and were therefore unprepared. The point is denied.

In a fourth point, appellants say it was error for the court to have sustained a defense objection to a question put by

plaintiffs' counsel to their witness, Dr. Robert Jones. The question inquired of Dr. Jones whether, in his opinion, the total hip replacement performed on Mrs. Reed by Dr. Sandow was, with reasonable medical certainty, necessary. Dr. Jones had not been endorsed as an expert witness. He was called to testify because Mrs. Reed had consulted him for a second opinion after Dr. Sandow had recommended the hip replacement. Defendants objected to the question as calling for the opinion of an expert not endorsed as such. The court sustained the objection.

It is well established that a court has broad discretion to choose a course of action during trial when evidence is challenged on the ground it has not been disclosed by answers to interrogatories and, in the sound exercise of that discretion, it may admit or reject the challenged evidence. *Manahan v. Watson*, 655 S.W.2d 807, 808 (Mo.App.1983). In a case where the offending party has failed to comply with the rules of discovery in the endorsement of expert witnesses, an order precluding the use of the expert witness not disclosed is not an abuse of the trial court's discretion. *State ex rel. Mo. Highway and Transp. Comm'n. v. Pully*, 737 S.W.2d 241, 245–46 (Mo.App.1987).

In the present case, it cannot be successfully argued that the question to be posed to Dr. Jones did not call for the opinion of a medical expert. It is undisputed that plaintiffs did not list Jones as one of the experts to be called. Under the circumstances, the court was entitled to impose the sanction. The only issue is whether the court abused its discretion in doing so. We believe not.

■ Without the testimony of Dr. Jones, the jury was otherwise informed by evidence from Dr. Sandow and from plaintiffs' expert, Dr. Marsh, that in their professional opinions, the osteotomy had failed by the time Mrs. Reed consulted Dr. Sandow and, at that time, hip replacement surgery was necessary. The evidence from Dr. Jones

was cumulative and its exclusion was not an abuse of the trial court's discretion.

■ The next point concerns a comment made in the hearing of the jury by defendants' attorney. In voir dire and in opening statement, the jury had been informed by defense counsel that defendants would present medical evidence in the case from Santore and a Dr. Phillips. As the defense neared the close of its case and reached the point of calling Dr. Phillips, the court instructed counsel that Phillips would not be permitted to testify because, in the court's view, the benefit from additional expert testimony would be outweighed by the prolongation of the trial.[1] A request that the court tell the jury why Dr. Phillips would not be heard was denied. Defense counsel then made the following statement in the presence and hearing of the jury:

> Your Honor, the defendant has decided it's not necessary to call Doctor Phillips who we have previously talked about, so I think that does it and the defendant rests.

At this point, the presentation of the evidence having been concluded, the jury was excused and the court and counsel retired to chambers where appellants' attorney raised an objection to the remark quoted above. No particular relief was sought. The court did not sustain or overrule the objection but expressed the opinion that he saw no prejudice in the statement. Appellants contend the court erred in "allowing defendant's [sic] counsel to make that statement." The point has not been preserved for appellate review. In the first place, the objection was not voiced at the time the comment was made to the jury and it was therefore waived. *Glasscock v. Miller*, 720 S.W.2d 771, 777 (Mo.App.1986). Secondly, the trial court made no specific ruling on the objection. It is the responsibility of the objecting party to insure that the trial judge has heard and ruled on the objection and if this is not done, nothing is preserved for review. *Sykes v. Bi–State*

---

1. Although a trial judge has wide latitude in controlling the conduct of a trial, he is not invested with arbitrary authority to determine, sua sponte, whether a witness may or may not contribute helpful evidence. The record here does not justify the order which barred Dr. Phillips' evidence, particularly where plaintiffs had made no objection.

*Dev. Agency,* 716 S.W.2d 856, 859 (Mo.App. 1986). Finally, the point fails because appellants sought no relief from the court, either for a mistrial, for an order striking the comment or for instruction that the jury disregard the comment. Where there is no objection until after the questioned matter is before the jury, it is incumbent on the objecting party to move for specific relief after the objection has been overruled. Failure to do so waives the asserted error. *Kilgore v. Linville,* 733 S.W.2d 62, 64–65 (Mo.App.1987).

Appellants' fifth point is denied, it being also noted that despite the foregoing deficiencies, we find no demonstrable prejudice to the appellants from the quoted remark.

■ The sixth point contends the trial court erred in failing to direct a verdict for the plaintiffs at the close of the evidence.

It is seldom, if ever, that a trial court should direct a verdict for the party having the burden of proof. *State ex rel. State Highway Comm'n v. Gebhardt,* 714 S.W.2d 558, 560 (Mo.App.1986). A court ordinarily is not justified in directing a verdict for the party having the burden of proof if the evidence relied on consists of oral testimony. *Hodges v. Hodges,* 692 S.W.2d 361, 366 (Mo.App.1985). In a negligence case depending on oral testimony, an exception to the rule precluding the direction of a verdict for the plaintiff arises only where the defendant admits or by his evidence establishes plaintiff's claim or, where there is no real dispute as to the basic facts supported by uncontradicted testimony. *Zagarri v. Nichols,* 429 S.W.2d 758, 760 (Mo.1968).

The basic issue in the present case was whether Dr. Spencer was negligent in that the treatment he rendered to Mrs. Reed was not performed with the degree of skill and learning ordinarily used under the same or similar circumstances by members of the medical profession. That determination depended on opinion evidence as well as the evidence of Mrs. Reed's physical condition and the treatment procedures Dr. Spencer employed. There was sharp conflict of opinion on the essential elements of the case. Dr. Spencer certainly did not

admit negligence and in most respects, the issues in the case were disputed. There was no conceivable basis for the court to have directed a plaintiffs' verdict because the defendants' evidence did not establish plaintiffs' claim and the basic facts on which the decision turned were disputed and were therefore not proved by uncontradicted testimony. The point is denied.

In a final point, appellants present a dual argument directed to the general complaint that the trial court unjustifiably undertook to expedite the proceedings. They first contend that in this framework of prejudice, even if the previous six points of error alone are not sufficient to warrant a new trial, the cumulative effect is enough to require that relief. They cite *Faught v. Washam,* 329 S.W.2d 588, 604 (Mo.1959), where it is said, "Without undertaking to determine whether any single matter ..., standing alone, would constitute reversible error [citations omitted], we are firmly of the opinion that, in their totality, they do."

Under the constraints of § 512.160.2, RSMo 1986, an appellate court is not to reverse a judgment for error unless some injury has been worked upon the complainant. *State v. Armstrong,* 605 S.W.2d 526, 530 (Mo.App.1980). Thus, every instance of trial error does not entitle an appellant to prevail. Only where prejudice is demonstrated will the judgment be reversed. The concept exemplified in *Faught* is an application of this rule indicating that the aggregation of errors may produce a cumulative effect of prejudice where individually, the prejudice is insufficient to justify reversal.

■ The principle is of no aid to appellants here. If the issue of prejudice, singly or collectively, is to be considered, there must first have been some error committed in the trial. In the six points of alleged trial error already discussed in this opinion, we have either concluded there was no error or, if error was present, it was not preserved for appellate review. There cannot be an argument advanced based on accumulated prejudice if there has been no underlying error in the trial. Such is the case here.

The second prong of the contention is that appellants were precluded from introducing relevant, material evidence because the trial judge insisted on completing the trial in time to secure a verdict before the Thanksgiving holiday. They say they were denied a fair trial.

We first observe that the trial commenced on Monday, November 16, 1987 and presentation of evidence continued through Monday, November 23, 1987. The trial transcript is over 1100 pages in length. Defendants called only one witness and read some fifteen pages from the deposition of a witness. By far the majority of the trial time was devoted to plaintiffs' presentation. No valid complaint may be made that the time was allotted unfairly to plaintiffs' disadvantage.

Irrespective of the foregoing, however, if appellants were denied the opportunity to present relevant and material evidence beneficial to their case merely because the convenience of the court and the jurors did not suit a holiday recess, the complaint is a valid one. We do not find, however, a presentation in the record of any ground to support the claim that plaintiffs' evidence was prejudicially foreshortened.

The only witness for plaintiffs who was not allowed to testify was Mrs. Reed's brother, Ben Weaver. Appellants' counsel informed the court on the evening of November 23 that he was not prepared to rest the plaintiffs' case because Weaver "was taken ill or something" and was not available that evening to testify. Counsel made no offer of proof to indicate what evidence Weaver would have contributed or what his condition may have been precluding his attendance. In their brief, appellants assert Weaver would have given evidence as to Mrs. Reed's condition while a child, before and after the surgery performed by Dr. Spencer, and at the time of trial. He also would have described business opportunities Mrs. Reed lost as a result of her condition.

Appellants did not make a sufficient record to support a claim of error in the refusal of the trial court to continue the time for presentation of plaintiffs' evidence beyond November 23. There was no offer of proof to show how Weaver's testimony would have benefited plaintiffs' case and therefore no basis for this court to determine whether relevant and material evidence was excluded. Moreover, plaintiffs had obviously not subpoenaed Weaver and he was under no duty to attend the trial on November 23 or on the following day. At the time, counsel could not and did not assure the court of any date when Weaver would have appeared. In these circumstances, it was not error to deny appellants' request that the evidence not be concluded.

The judgment is affirmed.

All concur.