**Pamela S. WATERS, Appellant,**

v.

**Robert M. BARBE, D.D.S., Respondent.**

**No. WD 42835.**

Missouri Court of Appeals,
Western District.

May 21, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 1991.

Application to Transfer Denied
Sept. 10, 1991.

P. Thomas Loughlin and John R. Campbell, Jr. (argued), Kansas City, for appellant.

Stephen S. Brown (argued) and Gabrielle M. Rhodes, Kansas City, for respondent.

Before NUGENT, C.J., and SHANGLER, GAITAN and BRECKENRIDGE, JJ.

NUGENT, Chief Judge.

Plaintiff Pamela S. Waters appeals the judgment of the circuit court entered on a jury verdict in favor of the defendant, Robert M. Barbe, a dental surgeon. We reverse and remand the trial court's judgment and order a new trial.

In her first point on appeal, the plaintiff contends that the trial court erred in excluding the testimony of a witness offered in rebuttal to the defendant's testimony, ruling that since she offered the witness after the first day of trial, his testimony would have prejudiced the defendant through unfair surprise. In her second point, Ms. Waters argues that the trial court erred when it refused to give the jury during deliberation an exhibit consisting of a portion of her answer to an interrogatory from a previous lawsuit, ruling that she had not formally introduced the exhibit into evidence. In her third and final point, she maintains that the trial court erred in overruling her motion in limine to bar evidence of a prior lawsuit against other dental surgeons, finding that certain materials from that action constituted admissions by the plaintiff.

In small part from the statements of facts, and in large part from our own research, we have gleaned the following facts. Sometime in 1981, at the University of Missouri (UMKC) dental school plaintiff Waters had braces placed on her teeth to straighten them. After the plaintiff had worn the braces for about two years, dentists at the school recommended that she have surgery to correct a protrusion of her lower teeth beyond her upper teeth, and further recommended that Drs. Robert Hiatt and David L. Moore, dental surgeons both, perform the surgery, which involved incising the gum, lifting tissue off bone near nerves enervating the face, cutting the upper and lower jaws, and altering the placement of the jaws. She consulted with Dr. Hiatt, agreed to the surgery, and underwent the surgery in August 1983.

Twelve to fourteen months later, a dentist cleaning Ms. Waters' teeth told her that she had "a posterior open bite" and suggested that she consult with the defendant about the problem. She did, and, according to Dr. Barbe, she complained that her upper and lower teeth did not touch and that "she still had lots of facial numbness from her previous surgeries." Dr. Barbe later testified that after his initial consultation with the plaintiff, he referred her back to the UMKC dental school and consulted with the school on Ms. Waters' condition. According to the defendant, he and the plaintiff discussed nonsurgical methods of correcting her open bite and he referred her back to the dental school for further consultation on nonsurgical alternatives.

After several more months, the defendant later testified, he concluded that, because of extensive root resorption, Ms. Waters' problem required surgical correction. The record includes testimony that Dr. Barbe discussed surgical options with another dental surgeon. He discussed the proposed surgery with Ms. Waters, and explained that the numbness she experienced might never disappear. Apparently they discussed other potential complications, but the record does not reveal exactly which problems.

The surgery from which this suit arose took place in May, 1985. Although it did not substantially change Ms. Waters' facial appearance, it did correct her bite so that her teeth came together and she could chew food properly. She complained, however, of an increased numbness beneath her lip.

Meanwhile, sometime in 1985, Ms. Waters filed suit against Drs. Hiatt and Moore, the curators of UMKC, and Dr. Richard H. Hamilton, a UMKC dental surgeon whose role in that lawsuit neither party has described. In her answer number 10 to interrogatories propounded by Dr. Moore, Ms. Waters attested that after the surgery performed by Drs. Hiatt and Moore, she had, along with the posterior open bite, paresthesia, or numbness, "of the cheek, nose, lip, chin, and mouth." Eventually, the parties settled that action.

On October 27, 1986, plaintiff Waters filed suit against Dr. Barbe, claiming that he negligently and carelessly failed to exercise the skill and care required of him. She

alleged that because of the defendant's negligence, she had severe malocclusion, damage to her teeth, gums and jaws, and a lack of feeling in her mouth and face. The action came to trial in September, 1989. Extensive discovery took place, including the exchange of interrogatories.

Before the impaneling of the jury, the plaintiff moved to exclude from evidence any reference to her action against Drs. Hamilton, Moore, Hiatt, and UMKC. The trial court denied the motion, explaining that it would admit a limited amount of evidence about the 1985 case. At trial, defense counsel questioned Ms. Waters about the injuries she described in her answers to Dr. Moore's interrogatories.

On the trial's second day, the plaintiff offered the rebuttal testimony of Dr. Richard Ackerman, the head of UMKC's department of orthodontics. She argued that the defendant's testimony had proved so surprising and untruthful that she had to call Dr. Ackerman, with whom Dr. Barbe had consulted before her surgery. The defense objected, arguing that the doctor's testimony would constitute unfair surprise and that the plaintiff had a duty under Rule 56 of the Missouri Rules of Civil Procedure to update her January 16, 1987, answer to defendant's interrogatory 19, in which she stated that only she and defendant Barbe had personal knowledge of the care and treatment mentioned in her pleadings. Plaintiff responded that Dr. Ackerman's name first arose in the defendant's January 20, 1987, answers to the plaintiff's interrogatories and that the plaintiff called the doctor not as an expert witness, but merely as a rebuttal witness. The court overruled the plaintiff's motion, but did permit an offer of proof of Dr. Ackerman's testimony. He testified that he had discussed Ms. Waters' condition with Dr. Barbe and that he had regarded as "contraindicated" any further surgery after her initial surgery under Drs. Hiatt and Moore.

In addition, over the plaintiff's objection, the trial court granted defendant Barbe's motion to inquire into Ms. Waters' lawsuit against Drs. Hiatt, Hamilton and Moore, but stressed that the defense could make only limited inquiry. The plaintiff argued that introduction of evidence about the prior lawsuit would prejudice her. The defense contended that it would introduce her earlier answers as statements against interest. Under cross-examination, plaintiff Waters testified that after surgery under those doctors, she experienced "paresthesia of the cheeks, nose, chin, lips, and mouth."

In an attempt to rehabilitate Ms. Waters, plaintiff's counsel questioned her on answers she had given in January, 1985, to Dr. Hamilton's interrogatories. She testified that she had answered that after her August 10, 1983, surgery, she had an improper bite that caused her to wear braces; that after "further surgery," she had a small area of paresthesis on her chin; and that at the time she answered the interrogatories, the paresthesis had grown to include her cheeks, lips and nose.

Although she had filed the interrogatory as Plaintiff's exhibit 26, Ms. Waters failed formally to offer it into evidence, and the court never received it into evidence. During its deliberations, the jury requested Plaintiff's exhibit 26, and the court sustained the defendant's motion to exclude it because the plaintiff had not offered it into evidence. The court did permit the jury to examine other answers to interrogatories from her previous lawsuit that the defendant had offered into evidence. To no avail, the plaintiff argued the unfairness of that decision.

The jury returned a verdict for defendant Barbe, and the trial court entered judgment on that verdict. Plaintiff Waters appealed.

In her first point on appeal, the plaintiff argues that the trial court erred in excluding the testimony of Dr. Ackerman. She contends that she called Dr. Ackerman not as an expert witness in orthodontics as the trial court found in its order, but rather as a witness called at the last minute to rebut the defendant's surprising and untruthful testimony. Therefore, she concludes, nothing obliged her to advise the defendant of her intention to call the witness. We agree.

The law accords a trial court broad discretion in the admission or exclusion of testimony challenged because the proffering party did not timely disclose the witness' identity by answers to interrogatories. *W.E.F. v. C.J.F.*, 793 S.W.2d 446, 448 (Mo.App.1990); *Reed v. Spencer*, 758 S.W.2d 736, 740 (Mo.App.1988); *Johnson v. Nat'l Super Markets, Inc.*, 710 S.W.2d 455, 456 (Mo.App.1986). Thus, we review this issue only for abuse of discretion, *Johnson, supra,* and we will set aside the trial court's decision only on a showing of arbitrary and capricious exercise of that discretion. *Holt v. Best,* 750 S.W.2d 705, 707 (Mo.App.1988).

Discretion means the option that a trial judge has in doing or not doing that which a litigant does not have the absolute right to demand. *Anderson v. Robertson,* 402 S.W.2d 589, 592–93 (Mo.App.1966). Of course, an untenable judicial act that defies reason and works an injustice constitutes abuse of discretion. *State v. Williams,* 643 S.W.2d 3, 4 (Mo.App.1982), *citing State v. Stubenrouch,* 499 S.W.2d 824, 826 (Mo. App.1973). When the trial court's ruling clearly offends the logic of the circumstances or when it becomes arbitrary and unreasonable, the appellate court will find an abuse of discretion. *State v. Marks,* 721 S.W.2d 51, 55 (Mo.App.1986), *citing Mathews v. Chrysler Realty Corp.,* 627 S.W.2d 314, 318 (Mo.App.1982). Once the appellate court has found that the trial court had alternative choices that would not yield a result contrary to the law, however, the review ends, and the appellate court will affirm any of those choices. *In re George,* 630 S.W.2d 614, 622 (Mo.App. 1982). These principles apply in both civil and criminal cases. *See Marks, supra; Williams, supra; Anderson, supra. Cf. Consolidated School Dist. Number 2 v. King,* 786 S.W.2d 217, 218 (Mo.App.1990).

Ms. Waters called the defendant as a rebuttal witness. A party calling an adverse party as a witness may contradict that person's testimony, but may not directly impeach the witness' credibility, *Lamb v. Heiligers,* 532 S.W.2d 820, 825 (Mo.App.1975), except with the witness' prior inconsistent statements. *Rowe v. Farmers Ins. Co., Inc.,* 699 S.W.2d 423, 424–25 (Mo.1985). Impeachment means an attack on a witness' general credibility, whereas contradiction means an attack on the accuracy of a witness' testimony and, unlike impeachment, usually adds factual evidence. *D.K.L. v. H.P.M.,* 763 S.W.2d 212, 219 (Mo.App.1988). *See Talley v. Richart,* 353 Mo. 912, 185 S.W.2d 23, 26 (1945). In *Seibel–Suessdorf Copper & Iron Mfg. Co. v. Manufacturers Ry. Co.,* 230 Mo. 59, 77–78, 130 S.W. 288, 293 (1910), the Missouri Supreme Court adopted BOUVIER'S definition of rebuttal evidence that described it as evidence that repels, counteracts or disproves evidence offered by the other party. *See also* BLACK'S LAW DICTIONARY 1139 (5th ed. 1979). Thus, rebuttal may serve as a vehicle for contradiction. In calling Dr. Ackerman, Ms. Waters purposed to contradict, rather than to impeach, defendant Barbe.

Contradicting a witness' testimony, however, inherently involves some impeachment because any conflicting evidence calls into question the reliability of that person's memory, observation or honesty. Consequently, a party offering evidence only to contradict a witness' testimony will unavoidably and incidentally impeach that witness. Impeachment, on the other hand, does not necessarily involve contradiction. For example, without ever contradicting a witness' statement, a party seeking to impeach that person's credibility could call a score of persons to testify that the witness has a reputation for lying, drunkenness and thievery.

Here, the plaintiff's motion and offer of proof regarding the Ackerman testimony clearly indicated the nature of the proffered evidence as contradictory evidence. We hold, therefore, that the incidental impeachment of defendant Barbe's reliability violated no rule against a party's direct impeachment of its own witness.

Moreover, under § 491.030, Revised Statutes of Missouri, 1986, a party calling another party to testify may cross-examine that witness as the party may cross-examine any witness. *Missouri Caf-*

*eteria v. McVey,* 362 Mo. 583, 242 S.W.2d 549, 555 (1951); *Lamb, supra.* The examining party becomes bound by the party examined only when that witness presents the only testimony in the trial on that point. *Missouri Cafeteria, supra; Lamb, supra.* Otherwise, the examining party becomes bound only by the testimony that it vouches for and offers as the truth. *Missouri Cafeteria, supra.*

■ Here, two other witnesses, Drs. Robert Olson and John Dann, testified to the necessity of surgical correction of the problem that Ms. Waters complained of to Dr. Barbe. Thus, the defendant did not present the only testimony on that point and the plaintiff did not become bound by testimony that she deemed untruthful, in this case, his assertion that members of UMKC's orthodontics department recommended surgery. Consequently, she could call a witness to contradict that testimony.

The defendant complains, however, that since the plaintiff had not named Dr. Ackerman in her January, 1987, answers to his interrogatories as someone having personal knowledge of the treatment mentioned in her pleadings, she could not call him on the second day of trial without prior warning. To do so constitutes unfair surprise, he argues. Further, he contends that Rule 56.01 requires a party to update answers to interrogatories when that party plans to call expert witnesses not named in the answers.

■ First, the plaintiff moved to permit Dr. Ackerman to testify as a rebuttal witness, not as an expert witness. Counsel reiterated that point in making the offer of proof of the proffered witness' testimony. During the offer of proof, the dentist testified that the surgery Dr. Barbe performed "was contraindicated"—a clear rebuttal to the defendant's testimony the day before. Observers of and participants in events called as witnesses other than expert witnesses, but who collaterally bring a certain expertise into their testimony, do not automatically become expert witnesses. *Owen v. City of Springfield,* 741 S.W.2d 16, 20

(Mo.1987), *cert. denied* 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 620 (1988).[1]

■ Moreover, calling Dr. Ackerman without warning did not constitute unfair surprise as defendant contends. Ordinarily, a party has the obligation to update its answers to interrogatories to advise adverse parties of any potential witnesses, thus eliminating the element of surprise at trial. *Laws v. City of Wellston,* 435 S.W.2d 370, 374 (Mo.1968). Here, however, Dr. Barbe himself first raised Dr. Ackerman's name in answering the plaintiff's interrogatories in January 1987. In his answer, the defendant listed Dr. Ackerman as someone with whom he consulted concerning the diagnosis and treatment of the plaintiff's condition. Further, at trial, he named Dr. Ackerman as someone with whom he may have consulted. Thus, he cannot complain that he first learned the identity of Dr. Ackerman the second day of his trial; he knew of that gentleman's knowledge of Ms. Waters' condition from the time he first consulted with him in 1985, and he affirmed that fact in January, 1987. Since he knew of Dr. Ackerman well before trial, he would not have suffered surprise or prejudice had the dentist testified. *See Faught v. St. Louis–San Francisco Ry. Co.,* 325 S.W.2d 776, 780 (Mo. 1959); *Turner v. Fuqua Homes, Inc.,* 742 S.W.2d 603, 611 (Mo.App.1987).

■ Nor would Dr. Ackerman's testimony have proved cumulative, as defendant Barbe asserts. Dr. Olson had already contested the defendant's assertion that plaintiff Waters' condition required surgery. Certainly, a trial judge may exclude cumulative evidence. *Reed, supra,* 758 S.W.2d at 740. Here, however, Dr. Olson testified to Ms. Waters' condition and to the surgery performed. In her offer of proof, the plaintiff proffered the testimony of Dr. Ackerman of UMKC's orthodontics department as a rebuttal to the defendant's testimony that the department recommended surgery, not orthodontic treatment. Thus, she did not seek to prove the correctness of Dr. Barbe's surgery, only the incorrectness of his assertion.

1. After October 28, 1982, the Missouri Supreme Court has heard all cases en banc.

We hold, therefore, that the trial court abused its discretion in refusing to permit Dr. Ackerman to testify. No legal reason prohibited his testimony. Moreover, the trial court's decision offended the logic of the circumstances and constituted an untenable judicial act that worked an injustice upon the plaintiff.

■ We need not address in detail the plaintiff's third point on appeal because the situation involved therein probably will not arise in a subsequent trial. We note, however, that a trial court has the discretion to refuse to send to the jury exhibits not formally offered into evidence. *See Woods v. City of Lake Lotawana,* 752 S.W.2d 869, 872 (Mo.App.1988). Nevertheless, this court's Eastern District has held that an exhibit marked and used becomes a part of the evidence as though the proffering party had formally introduced it into evidence. *Wilkins v. Cash Register Serv. Co.,* 518 S.W.2d 736, 751 (Mo.App.1975).

Finally, we address the plaintiff's second point on appeal because we believe that issue may arise again. Ms. Waters contends that the trial court erred in denying her motion in limine to suppress any references to her lawsuit against Drs. Hiatt, Moore and Hamilton. She argues that the defendant's references to her answers to interrogatories from that action confused and prejudiced the jury.

■ A party may use admissions made by the adverse party against its interest to impeach that party's testimony or other evidence. *Jimenez v. Broadway Motors, Inc.,* 445 S.W.2d 315, 317 (Mo.1969). Abandoned pleadings constitute such admissions, *id.,* as do interrogatories from other lawsuits. *McClanahan v. Deere & Co.,* 648 S.W.2d 222, 228 (Mo.App.1983).

■ Ms. Waters' answers to Dr. Moore's interrogatories related to the extent of paresthesia in her face that she experienced after the Hiatt-Moore operation. Even admissions that touch incidentally on a fact in an action serve as admissible evidence. *Mitchell Eng'g Co., Div. of CECO Corp. v. Summit Realty Co., Inc.,* 647 S.W.2d 130, 141 (Mo.App.1982).

Thus, here, the trial court did not err in admitting the plaintiff's answers to interrogatories from her previous action.

For the foregoing reasons, we reverse the judgment of the trial court, remanding this action to the trial court for a new trial.

All concur.