**James O. WYATT and Mary M. Wyatt, his wife, Plaintiffs–Appellants,**

v.

**David BEARDEN and Sharon Bearden, his wife, d/b/a Bearden Insurance Agency and Columbia Mutual Insurance Companies, Defendants–Respondents.**

**No. 18021.**

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 17, 1992.

Robert M. Ramshur, Ramshur & Goforth, P.C., Piedmont, for plaintiffs-appellants.

L. Dwayne Hackworth, Christina L. Mell, Piedmont, for defendants-respondents.

MAUS, Judge.

Upon a jury verdict, plaintiffs, James O. Wyatt and Mary M. Wyatt, his wife, (Wyatts), recovered a judgment against defendants, David Bearden and Sharon Bearden, his wife, d/b/a Bearden Insurance Agency, (Beardens), and Columbia Mutual Insurance Companies (Columbia) for $18,-750. The judgment was based upon Beardens' negligent loss of Wyatts' check delivered to Beardens' office for payment of a renewal premium for a policy of fire and extended coverage insurance issued by Columbia in the amount of $25,000. The trial court sustained the motion of Beardens and Columbia for a new trial. It did so upon the bases of the erroneous admission of evidence that Beardens mishandled funds of three other policyholders and because of an inadvertent discussion of one of those policyholders with a juror. Wyatts appeal.

By their petition, Wyatts alleged in general terms the Beardens "were negligent in the receiving or handling or processing of the insurance premium in the sum of $313, entrusted to Defendants Bearden by plaintiffs." They further alleged Columbia knew or had reason to know Beardens "did not have adequate procedures to safeguard premiums paid by plaintiffs and others to Bearden Insurance Agency for the purchase and renewal of policies of insurance issued by Columbia Mutual Insurance Companies and therefore the negligent conduct of Defendant Columbia Mutual, through its agents, servants and employees, rises to the level of reckless indifference of the rights of others so as to warrant the award of punitive damages." The instructions submitting Wyatts' theory of recovery are not before this Court. By its verdict, the jury, in general terms, found Columbia responsible for "any percentage of fault assessed to defendants Bearden." The jury also found Beardens to be 75% at fault and Wyatts 25% at fault. The court entered a judgment in the amount of $18,750 against Beardens and Columbia.

The evidence established that Columbia had, from 1984 to 1989, insured a farm dwelling owned by Wyatts for $25,000. On August 27, 1987, Columbia issued its renewal policy for the period July 28, 1987 to July 28, 1988. The annual premium was $313. The 1988 renewal premium was paid. Wyatts testified they received a notice of a premium of $313 due on July 28, 1989 for the renewal of the policy for the period July 28, 1989 to July 28, 1990. James Wyatt testified that on July 28, 1989, he wrote a check for $313 and delivered it to Jean Pullum, an employee in Beardens' office. The check did not clear Wyatts' account. The evidence showed Beardens had an employee by the name of Jean Burnett. Sharon Bearden testified the Wyatts were displeased with the handling of a prior claim by Beardens and Columbia and had stated they would make no future payments on insurance to either Beardens or Columbia. A bank officer of the bank that held a mortgage on Wyatts' farm testified that he gave Wyatt permission to not maintain insurance on the dwelling. Sharon Bearden also testified that James Wyatt did not come to the insurance agency office on the day in question and they had no record of a check written for the renewal premium. The premium was not received by Columbia. The policy was not renewed. The dwelling burned November 29, 1989.

After James Wyatt testified, Wyatts' lawyer read to the jury, without objection, the following interrogatory to which Sharon Bearden answered "No".

> " 'At any time previous to your answers to these interrogatories, have there been occasions when premiums have been paid to you for a proposed insured which were not paid over to the insurance company issuing the policies? If so, state for each such instance, the name, address and telephone number of the named insured and the name and address of the company proposed to be insuring the named insured.' "

Wyatts' lawyer also read to the jury, without objection, the following deposition testimony of David Bearden:

> " 'Q. Is this the only instance that you know of where there has been the loss of a premium delivered to your agency?'
>
> 'A. That's the only one I know of, Bob, since 1972.' "

The Beardens were present in the courtroom. Wyatts then called three witnesses who, over defendants' objections, testified to three transactions with Beardens.

One Murrell Wallace testified that she endorsed a social security check and gave it to "them" on July 3, 1987, to be used in part for the payment of a premium. Beardens gave her $106 in change. The premium on her policy was paid. But the social security check was never cashed. One Harry Weekley testified that on August 8, 1989, he went to the Bearden office to pay a premium. A lady there wrote a check for him for that purpose. He signed the check, but it apparently did not reach Columbia. Weekley received a lapse notice. The policy was retroactively reinstated. Wyatts' daughter testified that in December 1987 she paid, in cash, the expenses due for a requested change in her policy. When she received her renewal notice some months later, she learned that the change had not been made.

■ As stated, one of the bases upon which the trial court granted a new trial was because the evidence of these witnesses' prior dealings with Beardens "was incompetent, irrelevant and immaterial and the admission of this evidence resulted in prejudice to the Defendants."

Wyatts contend this was an improper basis for granting a new trial. They concede the general rule that "Missouri courts have generally ruled that evidence of similar prior acts of negligence by the parties is inadmissible to show that the party was guilty of negligence or contributory negligence in the instant case." O'Brien, *Mo. Law of Evidence* (2d ed.) § 10–14. (Footnote omitted.) But, they first argue the testimony of these three witnesses was admissible to impeach the statements of the Beardens that their agency had never mishandled the payment of a premium. As noted, the Wyatts, as part of their case in

chief, read an answer to an interrogatory by Sharon Bearden to this effect and a portion of a deposition of David Bearden to the same effect. Of course, the answer and the portion of the deposition read to the jury were not admissible in Wyatts' case in chief upon proper objection. The Beardens were in the courtroom.

"Generally, a deposition is not to be read in evidence when the deponent is present, except as an admission against the witness' interest or to *impeach his testimony.*" *Oventrop v. Bi–State Development Agency,* 521 S.W.2d 488, 494 (Mo. App.1975). (Emphasis added.)

Also see *Anglen v. Heimburger,* 803 S.W.2d 109 (Mo.App.1990). Neither the answer nor the deposition testimony was an admission against interest. By reading the answer and portion of the deposition, the Wyatts made the Beardens their witnesses. The traditional rule was that a party may not impeach his own witness. *Rowe v. Farmers Insurance Co., Inc.,* 699 S.W.2d 423 (Mo.banc 1985). However,

"the time has come for us to recognize the right of any party to introduce a prior inconsistent statement to impeach any witness regardless of by whom the witness may have been subpoenaed or called." *Rowe* at 425.

Also see 2 Gard, *Mo.Evidence* § 22:18 (1985).

"A party calling an adverse party as a witness may contradict that person's testimony, but may not directly impeach the witness' credibility, *Lamb v. Heiligers,* 532 S.W.2d 820, 825 (Mo.App.1975), except with the witness' prior inconsistent statements." *Waters v. Barbe,* 812 S.W.2d 753, 757 (Mo.App.1991).

The testimony of the three witnesses did not impeach the Beardens by prior inconsistent statements. That testimony was not admissible as impeachment.

■ The Wyatts next argue that the testimony of the three witnesses was admissible to contradict the answer to the interrogatory and the portion of the deposition read to the jury.[1] It should not be neces-

sary to state that a party may contradict, as distinguished from impeach, his own witness. *Talley v. Richart,* 353 Mo. 912, 185 S.W.2d 23 (1945). But, the right of contradiction is limited.

"Contradiction is not allowed on collateral matters. When the fact in dispute is of no material significance in the case or is not pertinent to the issues as developed, the matter is collateral. If a party has been permitted in the trial court's discretion to cross-examine a witness as to a collateral matter, the cross-examiner is bound by the witness' answers and will not be permitted to offer evidence to contradict the witness relative to such matters." O'Brien, *Mo.Law of Evidence* (2d ed.), § 5–4. (Footnotes omitted.)

"Counsel is bound by the answer of the witness on collateral matters.... Independent proof of that fact would not have been allowed because it does not relate to any of the material occurrences involved in this suit and is, therefore, collateral." *Lineberry v. Shull,* 695 S.W.2d 132, 136 (Mo.App.1985).

The test for determining whether or not evidence is collateral has been succinctly stated.

"The test as to whether a matter is collateral, as set forth in *Frechin v. Thornton,* 326 S.W.2d 122, 126 (Mo.1959), is whether the party seeking to introduce it for purposes of contradiction would be entitled to prove it as a part of his case." *D.K.L. by K.L. v. H.P.M.,* 763 S.W.2d 212, 218 (Mo.App.1988).

Also see *Hawley v. Merritt,* 452 S.W.2d 604 (Mo.App.1970); *Rice v. Lammers,* 65 S.W.2d 151 (Mo.App.1933). The general rule barring evidence of similar transactions has been stated:

"The rule is that evidence of prior transactions is one of the parties to the action with other persons, even though similar to the transaction involved in the case before the court, is generally inadmissible, since there would be no such logical or necessary relation between the several transactions that anything done

1. The distinction between "impeachment" and "contradiction" is discussed in *Waters v. Barbe,* 812 S.W.2d 753 (Mo.App.1991) and *D.K.L. by K.L. v. H.P.M.,* 763 S.W.2d 212 (Mo.App.1988).

in connection with the one could be relied on to prove or disprove anything in issue in connection with the other." *Castigliola v. Lippicolo,* 229 S.W.2d 266, 269 (Mo. App.1950).

The general rule is subject to exceptions. "The general rule is that evidence of transactions not connected with those involved in the particular case on trial is not admissible, but the law under certain circumstances recognizes and applies an exception to the general rule." *Rice v. Lammers,* 65 S.W.2d at 154.

One of those exceptions has been expressed in the following terms:

"Ordinarily, evidence of other accidents is inadmissible, although the judge may, in his discretion, admit such evidence *if conditions are shown to have been the same." Tolliver v. City of Sedalia,* 752 S.W.2d 473, 475 (Mo.App. 1988). (Emphasis added.)

The rule and that exception are stated and applied in *Tolliver.* In that case, the plaintiff alleged she fell in a shower area in a hospital operated by the defendant because of the negligence of the defendant. She offered in evidence the written policy of the hospital, promulgated after plaintiff's alleged fall, which included a statement that there had been incidents in which patients had received fractures from falls while taking a shower. The court held this statement was inadmissible because the conditions were not shown to be the same.

The testimony of the three witnesses did not establish that the circumstances under which they gave funds to someone in the Beardens' office were the same as those that existed when James O. Wyatt allegedly delivered a check to that office. The testimony of those three witnesses was irrelevant and was improperly admitted.

■ However, Wyatts next contend that such testimony was admissible under another exception. That exception has been recognized within the following statement of the general rule.

"Evidence which is otherwise irrelevant cannot become relevant simply because it is capable of being contradicted, and will thereby impeach the witness; and if such irrelevant evidence is admitted, it cannot be contradicted by extrinsic evidence. Thus, if a statement of a fact collateral to the issue is drawn from a witness upon cross-examination, the party eliciting the testimony cannot contradict it. And, although there is respectable authority to the contrary, the same doctrine is upheld by some courts *with respect to testimony on collateral questions elicited on direct examination."* 81 Am.Jur. 2d, *Witnesses,* § 612. (Emphasis added.)

That exception is recognized in this state. "In Missouri, impeachment and contradiction are generally not allowed on collateral matters, *see Frechin v. Thornton,* 326 S.W.2d 122, 126 (Mo.1959), but an exception to this rule is that a party may impeach or contradict on matters brought out on *direct* examination." *Maugh v. Chrysler Corp.,* 818 S.W.2d 658, 661 (Mo.App.1991). (Emphasis in original.)

The exception is not applicable to the testimony of the three witnesses. The Beardens did not place the answer to the interrogatory and deposition testimony in evidence on direct examination in their case in chief. The Wyatts injected that evidence. A party may not set up in his case in chief a statement of an opposing party for the purpose of knocking it down by inadmissible, prejudicial testimony on a collateral matter.

The admission of the testimony of the three witnesses concerning their transactions with Bearden Insurance Agency over the defendants' objections was error. The trial court properly granted a new trial upon that basis. That being so, it is not necessary to consider whether or not the inadvertent juror contact constituted a basis for a new trial. *Stram v. Miller,* 663 S.W.2d 269 (Mo.App.1983). The judgment of the trial court granting a new trial is affirmed.

MONTGOMERY, P.J., and FLANIGAN, J., concur.